## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

MERON TAYE, an individual,

      Plaintiff,

vs.

VECTRUS, INC,

      Defendant

Civil Action No:

_____

**COMPLAINT**
**JURY TRIAL REQUESTED**

COMES NOW Plaintiff Meron Taye, and by and through undersigned counsel, states and alleges as follows:

## NATURE OF CLAIMS

1.        This is an action to correct the unlawful employment practice of discrimination, harassment, and retaliation in violation of the Civil Rights Act, 42 U.S.C § 2000e, *et seq.* ("Title VII") and the American with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADAAA"). This action seeks to provide appropriate relief to Meron Taye ("Plaintiff" or "Ms. Taye") who is adversely affected by such unlawful employment practices.

2.       Ms. Taye was a full-time employee of Vectrus, Inc. ("Vectrus" or "Defendant") beginning in August 2021 and continuing for approximately a year where she worked as a Publications Specialist Technician at Camp Arifjan, Kuwait. Plaintiff is a Muslim Ethiopian married mother of 2 children, ages 5 and 10. Plaintiff is an orthodox Muslim who believes the human body is a temple of God's creation meaning Plaintiff's religious beliefs mandate she remain free of certain foreign substances, including the COVID-19 vaccination.

3.       Ms. Taye and her husband met in Kuwait and were both active employees of Vectrus.  Plaintiff embraced Kuwait as home and enjoyed supporting the US Army achieve its mission readiness.

4.       Unfortunately, and as detailed below, Ms. Taye was fired from her position in Kuwait, returned to the United States and placed on unpaid leave of absence because of her religion, race, national origin and gender by Defendant engaging in a manipulative, deceitful, and coercive pattern of conduct relating to its mandatory COVID-19 vaccination policy.

5.       Because of Vectrus' failure to engage in the interactive process and refusal to accommodate Ms. Taye's sincerely held religious objection to receiving the COVID-19 vaccine, Plaintiff suffered the following adverse employment

actions: (a) termination from her position in Kuwait, (b) indefinite unpaid leave (c) loss salary and fringe benefits, and (d) elimination of any upward career mobility.

## PARTIES

6.      Plaintiff Meron Taye is an individual who is a citizen of the State of Georgia with her principal place of residence located at 4695 Bondale Dr Columbus, GA 31907 in Muscogee County.

7.      Defendant Vectrus, Inc. is a defense system service corporation organized under the laws of the State of Delaware but continuously transacting business nationwide and engaging in an industry affecting interstate commerce. It has a principal place of business located at 2424 Garden of the Gods Road, Colorado Springs, CO., 80919.

8.      At all relevant times, the Defendant has conducted business in the State of Georgia and has continuously maintained at least 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is a covered entity within 42 U.S.C. § 12111 and 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

9.      Plaintiff seeks relief under the Civil Rights Act, 42 U.S.C § 2000, *et seq.* ("Title VII"), and the American with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* ("ADA").

10.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

11.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District and because a substantial part of the events or omissions giving rise to this claim occurred in this District. Defendant Vectrus may be served with this Complaint and Summons through its registered agent for service, C T CORPORATION SYSTEM located at 289 S Culver St, Lawrenceville, GA, 30046 in Gwinnett County.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding Defendant's discriminatory conduct, unlawful harassment, retaliation and a variety of other related claims on or about September 20, 2022

13.     The EEOC issued a Notice of Right to Sue which Plaintiff received on or about September 26, 2022.

4

14.     Plaintiff has fully exhausted her administrative remedies and is entitled to file in the district court. This Complaint is timely filed.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment with Vectrus

15.     Vectrus is a multi-billion-dollar defense contractor with numerous offices worldwide. Plaintiff is an orthodox Muslim who is a first-generation immigrant to the United States.

16.     From August 17, 2021 to June 30, 2022, Plaintiff was an active employee with Vectrus where she worked as Publications Specialist Technician at Camp Arifjan, Kuwait – a location operated by CENTCOM, a government contractor.

17.     While working as an active full-time employee, Plaintiff received high performance marks and was universally liked by her supervisors and co-workers.

18.     Plaintiff's work as a Publications Specialist Technician permitted her to work remotely (also known as telecommute) regularly in complete seclusion from her co-workers. Plaintiff's work was not such that various means of mitigating the spread of the COVID-19 virus were untenable or unduly burdensome for Defendant.

**Vectrus' COVID-19 Vaccine Mandate**

19.      On or about November 3, 2021, Frank Peloso – Vectrus' Senior Vice President and Chief Human Resources Officer – sent a companywide email titled "UPDATED COVID-19 Guidance."

20.      Among other issues, Mr. Peloso's email explained: "Our overarching goal is to safeguard and retain the Vectrus workforce while complying with federal mandates outlined by Executive Order 14042. …   While we continue to strongly encourage our employees to get vaccinated, the medical accommodation and/or religious/belief exemption provide avenues for employees who – for a variety of reasons – are not vaccinated. The ProcessMAP solution will have the forms and workflows to facilitate the approval process through human resources. Our plan is to work with each and every employee who submits an accommodation to determine the best outcome. One stipulation from the guidelines is that an employee with an approved accommodation/exemption will have to provide weekly negative COVID-19 test results which will also be tracked in the ProcessMAP system."

**Vectrus' Failure to Engage in Interactive Process**

21.      On or about November 14, 2021, in accordance with Mr. Palomo's guidance, Plaintiff sought a religious exemption to Vectrus' COVID-19 vaccine mandate from Vectrus' Human Resources Department.

22.     Plaintiff submitted an internal Vectrus waiver request at which point Vectrus' policy required it to submit Plaintiff's waiver request to CENTCOM. Plaintiff could not submit her waiver request directly to CENTCOM as regulatory and contractual mandates require a government contractor to submit a waiver request on an employee's behalf.

23.     Under the law, after receiving her religious exemption request in mid-November 2021, Vectrus was statutorily required to *promptly* engage in the good faith interactive process *while Plaintiff was employed in Kuwait*.  Indeed, once Vectrus became aware of Plaintiff's religious conflict, Vectrus should have *promptly* obtained whatever additional information needed to determine whether a reasonable accommodation was available to Plaintiff.

24.     Vectrus's Human Resources Department assured Plaintiff that her religious exemption was being processed through Vectrus' ProcessMAP system *and* CENTCOM's vaccine exemption program.

25.     Plaintiff believed Vectrus was taking all necessary steps to accommodate her sincerely held religious beliefs including submitting her vaccine waiver requests to CENTCOM's Office of the Chaplin for consideration. Plaintiff was misled.

26.     Vectrus woefully failed to meet its legal obligations.  Vectrus asked Plaintiff to sign a CENTCOM COVID-19 "<u>medical</u> exemption form" for submission to CENTCOM's Office of Medical Affairs shortly before she was scheduled to depart from Kuwait and *after* Vectrus had terminated her Publications Specialist Technician at Camp Arifjan, Kuwait.  Plaintiff found this odd and disturbing as she thought Vectrus had already submitted her <u>religious</u> exemption request to CENTCOM's Office of the Chaplin.  It had not.

27.     Vectrus submitted a "<u>medical</u> exemption form" to the CENTCOM Officer of Medical Affairs – not CENTCOM's Office of the Chaplin in February 2022, approximately *two (2) days* before Plaintiff relocated halfway around the world back to the United States due to the termination of her service in Kuwait.

28.     Even if CENTCOM's Office of Medical Affairs was the appropriate CENTCOM processing center (it was not), Vectrus delayed *seven (7) months* in submitting Plaintiff's religious exemption and only acted after Plaintiff retained counsel who made a formal inquiry with Vectrus' Legal Department about the status of Plaintiff's CENTCOM religious exemption request.

29.     Vectrus' *seven (7) month* delay is the antithesis of promptly engaging in the interactive process to accommodation Plaintiff's sincerely held religious beliefs against receiving the COVID-19 vaccine.

30.     Plaintiff suspects Vectrus will claim it has engaged in the interactive process by currently continuing to "employ" Plaintiff on an unpaid indefinite leave status; however, unpaid leave is not a reasonable accommodation to Plaintiff's religious beliefs.  Such an assertion is a strawman argument and nothing more than a pretext for Vectrus to continue to discriminate and harass Plaintiff based on her sincerely held religious beliefs

31.     Vectrus neither gathered Plaintiff's relevant information nor seriously explored a reasonable accommodation for her sincerely held religious beliefs. In reality, Vectrus engaged in no worthwhile interactive process with Plaintiff and instead fired Plaintiff from her position in Kuwait and placed her on unpaid leave.

32.     For example, Vectrus could have explored a reasonable accommodation wherein Plaintiff provided weekly negative COVID-19 test results and/or wore a face mask or covering while in the workplace.

**Vectrus' Failure to Grant Plaintiff a Reasonable Accommodation**

33.     In the end, Vectrus told Plaintiff that CENTCOM's Office of Medical Affairs denied her religious exemption application on or about February 11, 2022, less than *forty-eight hours* after Vectrus submitted same to CENTCOM.

34.     It is obvious that Vectrus' hasty and last-minute submission of Plaintiff's CENTCOM religious exemption was simply an administrative check-the-box exercise. Look no further than the fact Vectrus submitted Plaintiff's religious exemption to CENTCOM *after* she was terminated from her position in Kuwait.

35.     Plaintiff assumed Vectrus had submitted her waiver request to CENTCOM. In fact, Vectrus *had not* submitted Plaintiff's waiver request to CENTCOM prior to Vectrus' internal waiver denial.

36.     Upon information and belief, Vectrus provided a reasonable accommodation – such as PCR COVID-19 testing – for employees seeking a medical exemption while concurrently not offering such a reasonable accommodation to employees seeking a religious exemption.

37.     Upon information and belief, Vectrus granted several employees a medical exemption to the Covid-19 vaccine but did not grant a similar exemption to employees seeking a religious exemption.

38.     Granting the same or similar accommodations to Plaintiff would not have been an undue hardship for Defendant given that it had done this for others.

**Vectrus Harassed Plaintiff Due to Her Religious Objection to the Vaccine**

39.     Defendant unlawfully harassed Plaintiff shortly after she requested a religious exemption to the COVID-19 vaccine mandate.

40.     Defendant bullied Ms. Taye into an economic "quid pro quo" wherein Vectrus pressured her to abandon or alter a religious practice as a condition of employment. Vectrus forced Plaintiff to choose between gainful employment in Kuwait or practicing her sincerely held religious belief as an unpaid "employee" with no benefits or opportunity for promotion.

41.     This harassment of making Plaintiff receive the COVID-19 vaccine as a condition of employment caused Plaintiff to lose her position in Kuwait -- Plaintiff would have remained a salaried employee in Kuwait, but for her sincerely held religious belief against receiving the COVID-19 vaccine.

42.     Defendant also apparently failed to follow Vectrus' ProcessMAP system.  Months after Vectrus Human Resources Department had denied her internal Vectrus religious exemption, Plaintiff received a Vectrus Offer Letter dated May 30, 2022 to extend her position in Kuwait for an additional year *without the requested exemption*.  At a minimum, Vectrus' Offer Letter is evidence that Vectrus did not consider Plaintiff's religious exemption application to be sincere.

43.     Vectrus is currently engaged in a disingenuous and bad faith "reasonable accommodation process" insomuch as Vectrus asked Plaintiff to apply for various unsuitable positions – the majority of which are located in distant lands such as Romania and Cuba. As noted above, Vectrus should have engaged in the

interactive process *promptly* after Plaintiff initially requested a reasonable accommodation for her religious beliefs.

44.     Now, over a year after Plaintiff requested a reasonable accommodation while employed in Kuwait, Vectrus apparently believes a bogus and disingenuous "interactive process" is the key to avoiding liability. Vectrus' 11th hour "interactive process" must be rejected as nothing more than a pretext to discriminate and harass Plaintiff based on her religion.

**Vectrus' Discrimination of Plaintiff Based on Religion, Race, National Origin and Gender**

45.     In addition to religious discrimination and harassment, Vectrus discriminated against, and harassed Ms. Taye based on her race, national origin and gender. This analysis is simple: Vectrus had a seemingly neutral COVID-19 vaccine policy but – in practice and implementation – the policy was weaponized to discriminate and harass Plaintiff due to her religion, race, national origin and gender.

46.     As an Ethiopian Muslim married woman, Plaintiff's race, gender religion and national origin was easily identifiable based on her name, accent, and manner of speech. Equally important, Vectrus' Human Resources Department and her supervisors knew Plaintiff well and Plaintiff's husband who also worked at Vectrus' Kuwait location.

47.     Vectrus treated Plaintiff as subservient to her husband due to stereotypes they attribute to Ethiopian Muslim married women. Vectrus management discriminated against Plaintiff by assuming her husband had authority to essentially make career decisions on her behalf. On one egregious occasion, a Vectrus manager and Vectrus Human Resources Department assumed Plaintiff's husband had the cultural authority to resign on Plaintiff's behalf.  Plaintiff was shocked that Vectrus' Human Resources Department assumed "her husband" spoke for her as such an assumption was obviously based on an inaccurate Muslim stereotype.  Vectrus' Human Resources Department never clarified what happened aside from informing Plaintiff "her husband" told them Plaintiff resigned effective immediately.  To date, Vectrus' Human Resources Department has not told Plaintiff how it obtained her apparent fraudulent signature.

48.     A Vectrus manager and Vectrus Human Resources Department formed a discriminatory stereotype that the husband of a female cultural Muslim wife has the authority to speak on her behalf; this is the definition of unlawful stereotyping and discrimination based on Plaintiff's race, gender, religion and national origin.

49.     Several of Vectrus employees, similarly situated to Plaintiff, but of a different religion, race, national origin or gender were treated more favorably than

Plaintiff when they were not harassed, not terminated, and not placed on unpaid leave. As such, it is reasonable to infer, absent other evidence, that religion, race, national origin or gender were factors in the disparate treatment of Plaintiff when compared to her similarly situated employees.

## CLAIM FOR RELIEF

### COUNT I
**Title VII of the Civil Rights Act, as amened, 42 U.S.C. §2000e, *et seq*.**
*Discrimination – Failure to Accommodate a Religion*

50.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

51.     Title VII prohibits discrimination on a protected basis "with respect to . . . compensation, terms, conditions, or privileges of employment," for example, setting or adjusting wages, granting benefits, and/or providing leave in a discriminatory fashion."   Moreover, Title VII prohibits employers from disciplining or discharging employees because of their religion.

52.     Plaintiff holds sincere religious beliefs that preclude her from receiving the COVID-19 vaccine.

53.     Defendant displayed a lack of good faith in seeking a reasonable accommodation, failed to engage in the interactive process, and failed to provide reasonable accommodations.

54.     In response to Plaintiff's request for a reasonable accommodation of her religious beliefs, Defendant has taken adverse actions against Plaintiff that has harmed, and will continue to harm, Plaintiff. First, Plaintiff was terminated from her position in Kuwait. Second, Plaintiff was placed, and remains, on unpaid leave indefinitely. Third, Plaintiff has been denied income, fringe benefits and upward career mobility.

55.     As a direct and proximate result of the foregoing violations of the Title VII, Plaintiff has sustained economic and non-economic damages, including, but not limited to, loss of wages, benefits, interest thereupon, loss of the opportunity to advance with Vectus and emotional distress. Plaintiff is entitled to recover economic and statutory damages and penalties including back pay, front pay, compensatory and punitive damages, attorney's fees, costs of this litigation and other appropriate relief.

## COUNT II
**Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq.***
*Retaliation*

56.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

57.     Plaintiff has sincerely held religious beliefs that preclude her from receiving the COVID-19 vaccine.

58.     Plaintiff requested an exemption from Vectrus' Covid-19 vaccine mandate on religious grounds. As such, she thus engaged in protected activity under Title VII.

59.     In retaliation, Defendant terminated Plaintiff from her position in Kuwait and has since kept her on an unpaid and indefinite leave of absence. Vectrus did so solely because she refused to violate her strongly held religious beliefs.

60.     But for Defendant's unlawful and discriminatory reactions to Plaintiff's application for a religious exemption to the Covid-19 vaccine mandate, Plaintiff would have continued as a Publications Specialist Technician at Camp Arifjan, Kuwait with no intention of leaving this position.

61.     As a direct and proximate result of the foregoing retaliation in violation of Title VII, Plaintiff has sustained economic and non-economic damages, including, but not limited to, loss of wages, benefits, interest thereupon, loss of the opportunity to advance with Vectus and emotional distress. Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, compensatory and punitive damages, attorneys' fees, costs of this litigation, and other appropriate relief.

## COUNT III
**Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq*.**
*Hostile Work Environment based on Religion*

62.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

63.     Plaintiff was subjected to ongoing harassment, criticism, and ridicule because of her sincerely held religious beliefs in violation of Title VII. This occurred regularly in various instances, including, and not limited to, when her application for religious exemption was not taken seriously and not timely and properly processed. And, when she was being treated as subservient to her husband.

64.     Defendant's conduct was unwelcome as evidenced by complaints about this conduct Plaintiff made to its Human Resources Department.

65.     Plaintiff perceived the working environment to be abusive or hostile. A reasonable woman in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

66.     Defendant's conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive and hostile work environment.

67.     As a direct and proximate result of the harassment, Plaintiff has sustained economic and non-economic damages, including, but not limited to, loss of wages, benefits, interest thereupon, loss of the opportunity to advance with Vectus and emotional distress. Plaintiff is entitled to recover economic and statutory

damages and penalties, including back pay, front pay, compensatory and punitive damages, attorneys' fees, costs and other appropriate relief.

## COUNT IV
**Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq.***
*Disparate Treatment – Religion*

68.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

69.     Plaintiff is an orthodox Muslim Ethiopian married mother of two children.

70.     Plaintiff was qualified for her position as a Publications Specialist Technician for at Camp Arifjan, Kuwait.

71.     Nevertheless, Plaintiff was discharged from her position in Kuwait by Defendant and was placed on indefinite unpaid leave.

72.     Defendant discharged Plaintiff from her position because of her religious beliefs and practice.

73.     Similarly situated individuals outside Plaintiff's religion were treated more favorably in that they were permitted to retain their positions and benefits.

74.     As a direct and proximate result of the foregoing disparate impact, Plaintiff has sustained economic and non-economic damages, including, but not

limited to, loss of wages, benefits, interest thereupon, loss of the opportunity to advance with Vectus and emotional distress. Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, compensatory and punitive damages attorneys' fees, costs and other appropriate relief.

## COUNT V
### Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq.*
*Disparate Treatment – Race*

75.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

76.     Plaintiff is Black. She is an Ethiopian orthodox woman.

77.     Plaintiff was qualified for her position as a Publications Specialist Technician at Camp Arifjan, Kuwait.

78.     Plaintiff was discharged from her position in Kuwait by Vectrus and was placed on indefinite unpaid leave.

79.     Vectrus discharged Plaintiff from her position in Kuwait because of her race.

80.     Similarly situated individuals outside Plaintiff's race were treated more favorably in that they were permitted to retain their positions and benefits.

81.     As a direct and proximate result of the foregoing hostile work environment, Plaintiff has sustained economic and non-economic damages,

including, but not limited to, loss of wages, benefits, interest thereupon, loss of the opportunity to advance with Vectus and emotional distress. Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, compensatory and punitive damages, attorneys' fees, costs, and other appropriate relief under Title VII.

## COUNT VI
**Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq.***
*Disparate Treatment – Gender*

82.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

83.     Plaintiff is female.

84.     Plaintiff was qualified for her position as a Publications Specialist Technician at Camp Arifjan, Kuwait.

85.     Plaintiff was discharged from her position in Kuwait by Vectrus and placed on indefinite unpaid leave.

86.     Vectrus discharged Plaintiff from her position in Kuwait because of Plaintiff's gender.

87.     Similarly situated individuals outside Plaintiff's gender were treated more favorably.

88.     As a direct and proximate result of the foregoing disparate treatment, Plaintiff has sustained economic and non-economic damages, including, but not limited to, loss of wages, benefits, interest thereupon, loss of the opportunity to advance with Vectus and emotional distress. Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, compensatory and punitive damages, attorneys' fees, costs and other appropriate relief.

## COUNT VII
**Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq.***
*Disparate Treatment – National Origin*

89.     Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

90.     Plaintiff is Ethiopian.

91.     Plaintiff was qualified for her position as a Publications Specialist Technician at Camp Arifjan, Kuwait.

92.     Nevertheless, Plaintiff was discharged from her position in Kuwait by Vectrus and placed on indefinite unpaid leave.

93.     Vectrus discharged Plaintiff from her position in Kuwait because of Plaintiff's Ethiopian national origin.

94.      Similarly situated individuals outside Plaintiff's cultural identity were treated more favorably.

95.      As a direct and proximate result of the foregoing disparate treatment, Plaintiff has sustained economic and non-economic damages, including, but not limited to, loss of wages, benefits, interest thereupon, loss of the opportunity to advance with Vectus and emotional distress. Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, compensatory and punitive damages, attorneys' fees, and other appropriate relief.

## COUNT VIII
**American with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.***
*Perceived Disability Discrimination and Harassment*

96.      Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

97.      Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

98.      Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that prior to and at the time that Defendant fired Plaintiff from her position in Kuwait, Plaintiff was qualified for employment as a Publications Specialist Technician.  She has the requisite education to perform and can perform

the essential functions of a Publications Specialist Technician, and either held or desired to hold a position as a Publications Specialist Technician.

99.     However, she was regarded as disabled by Defendant. Vectrus perceived Plaintiff as suffering from a physical impairment that substantially limits major life activities due to her unvaccinated status and Plaintiff's alleged increased susceptibility to contracting COVID-19.

100.     Plaintiff was marginalized and treated inferior to her co-workers based solely on her unvaccinated status.   As a result of Defendant regarding Plaintiff as disabled, Plaintiff was caused by Defendant to be terminated from her position in Kuwait, placed on unpaid leave and subject to emotional distress.

101.     Plaintiff complained to Vectrus Human Resources that she was being harassed and discriminated against based on her perceived disability. But nothing was done to rectify the issue.

102.     As a direct and proximate result of the foregoing violation of the ADAAA, Plaintiff has sustained economic and non-economic damages, including, but not limited to, loss of wages, benefits, interest thereupon, loss of the opportunity to advance with Vectus and emotional distress. Plaintiff is entitled to recover economic and statutory damages and penalties, including back pay, front pay, attorneys' fees, costs of this litigation and other appropriate relief pursuant to 42

U.S.C. § 12205. 34.  Plaintiff is further entitled to any and all relief permitted under 42 U.S.C. § 12117(a), including equitable relief.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following:

1) Summons issue for Defendant, Vectrus, Inc.;

2) Trial by Jury;

3) An award of economic, non-economic, compensatory and punitive damages to Plaintiff in an amount to be determined at trial, together with post-judgement and pre-judgment interest, costs, and attorneys' fees;

4) An order that Defendant reinstate Plaintiff in part-time or full-time employment, at her option, with any necessary reasonable accommodation, for which she is qualified, at the average rate she would have earned had her conditional or contingent offer not been rescinded or her employment in Kuwait had not terminated, with retroactive seniority, payment of back pay with interest, pension, and related benefits;

5) An order enjoining Defendant from failing or refusing to provide sufficient remedial relief to make whole Plaintiff for the losses she has suffered as a result of the adverse treatment presented in this Complaint;

6) An order requiring Defendant to take other appropriate nondiscriminatory measures to overcome the effects of the discrimination; and,

7) Such other relief as the Court deems just and proper.

Respectfully submitted this 17th day of December 2022.

/s/Sherifat E. Oluyemi            .
Sherifat E. Oluyemi, Esq.
Georgia Bar No.: 254547
LAW OFFICE OF SHERI OLUYEMI, LLC
2727 Paces Ferry Rd. SE, Suite 750
Atlanta, GA. 30339
(404) 500-6202
soluyemi@losollc.com

Danel A. Dufresne, Esq.
Minnesota Bar No: 0319065
DUFRESNE LAW FIRM, PLLC
21 Cooper Circle
Edina, MN 55436
(858) 740-8181
daneldufresne@gmail.com
(Pro Hac Vice pending)

*Attorneys for Plaintiff Meron Taye*